UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEMAR NEAL,

                              Plaintiff,              9:25-CV-0709
                                                      (GTS/MJK)
              v.


CHAIRMAN ALLEN RILEY, et al.,

                              Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

DEMAR NEAL
Plaintiff, pro se
Greene County Jail
80 Bridge Street
P.O. Box 231
Catskill, NY 12414

GLENN T. SUDDABY
United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

Pro se plaintiff Demar Neal ("plaintiff") commenced this action, pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA") by filing a complaint.  Dkt. No. 1 ("Compl.").  Plaintiff, who is presently incarcerated at Greene County Jail, has paid the statutory filing fee, in full.

### II.    SUFFICIENCY OF THE COMPLAINT

#### A.  Governing Legal Standard

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).  The term "prisoner" includes pretrial detainees.  28 U.S.C. § 1915A(c) (2006).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should

exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned, the 'defendant unlawfully harmed me' accusation." *Id.*

### B.  Summary of the Complaint

The following facts are set forth as alleged by plaintiff in his complaint.

On June 14, 2024, plaintiff was in the custody of the Green County Sheriff at Greene C.J.  Compl. at 5.  Plaintiff informed an officer that his religious preference was Santeria and completed a request for "religious items."  *Id.*

On June 21, 2024, plaintiff was informed that his request was not filed.  Compl. at 5. Plaintiff filed a grievance related to the issue.  *Id.*  On June 24, 2024, plaintiff was advised that he would be permitted to have five beaded necklaces, a bracelet, a statue, cascarilla,

and rose water. *Id.* at 5. On June 26, 2024, plaintiff received five necklaces and one bracelet. *Id.* at 6.

In June 2024 and July 2024, plaintiff filed grievances related to religious items and services for Santeria practitioners. Compl. at 6-9. Defendant Grievance Coordinator Mandrake Vermilyea ("Vermilyea") denied the grievances citing "safety and security." *Id.* Plaintiff appealed the decisions and defendant Lieutenant Dan Rubino ("Rubino"), the Chief Administrative Officer, accepted the grievances, in part. *Id.* Plaintiff appealed Rubino's decisions to defendants John/Jane Doe, the nine members of the New York State Commission of Correction Citizens Policy and Complaint Review Council ("Doe Defendants/Council"). Compl. at 6-9. Defendant Sheriff Peter J. Kusminsky ("Kusminsky") was informed that "the Council sustains the action taken by the facility administration." *Id.*

In October 2024, plaintiff filed grievances complaining that accommodations were not being made for Santeria services and claiming that defendant Rubino made "arbitrary, capricious, and bias" decisions regarding religious items. Compl. at 10-11. Vermilyea denied the grievances and plaintiff appealed to Rubino. *Id.* Rubino denied the appeals and plaintiff appealed to Doe Defendants/Council. *Id.* Kusminsky was advised that the facility determination was "sustained."

On October 30, 2024, plaintiff had a "manic psychotic mental breakdown." Compl. at 12. Plaintiff was sprayed with a chemical agent and moved to an isolation cell without an opportunity to shower or decontaminate. *Id.* Plaintiff was transferred to segregated housing and an order was issued directing staff to place plaintiff in mechanical restraints anytime he was out of his unit. *Id.* at 13-14.

On October 31, 2024, plaintiff received misbehavior reports charging him with assault, disorderly conduct, disobeying orders, and spitting. Compl. at 15. Plaintiff filed a grievance claiming he did not receive a disciplinary hearing in a timely manner. *Id.* Plaintiff's grievance was denied as untimely. *Id.* Plaintiff was advised that he was "not Ad Seg and staff had 15 business days to render hearing." *Id.* Plaintiff appealed the decision claiming that while he was told he was "not Ad Seg," he was denied outside/fresh air and recreation for thirteen days. Compl. at 15, 30. Vermilyea advised that the grievance would be "forwarded to administration for further consideration" as the "issues fall outside the scope of his authority to investigate." *Id.* at 15. The grievance was not addressed. *Id.* Defendant Superintendent Raymond J. Shanley ("Shanely") Shanley "kept" plaintiff in a single occupancy living unit without any review, renewal or assessment until February 2025. Compl. at 29.

From October 31, 2024 until November 27, 2024, Vermilyea, Rubino, and Shanley "were in agree[ment]" that plaintiff should have "non-contact visits" with his family and that plaintiff must be handcuffed during the entirety of the visit. Compl. at 28.

On November 3, 2024, plaintiff filed a grievance with defendant Correctional Officer Justine Albin ("Albin") complaining of jaw pain due to an "excessive force" incident from "staff [. . . ] slamming his face into a glass window while moving him from 14 cell to 06 cell." Compl. at 13. On November 4, 2024, plaintiff filed a formal complaint accusing defendant Shanley of excessive force. Compl. at 13. Shanley responded and advised that Rubino investigated the complaint and found "insufficient evidence to confirm[.]" *Id.*

On November 12, 2024, plaintiff received notice of a disciplinary hearing. Compl. at 16. On November 15, 2025, the hearing commenced. *Id.* On November 21, 2024, after a

disciplinary hearing, the hearing officer found plaintiff guilty of fighting, disorderly conduct, disobeying an order, and spitting.  Id.  Plaintiff was sanctioned to 60 days loss of visitation privileges and keep lock for 17 hours/day.  Compl. at 16.  Plaintiff appealed the determination to Shanley.  *Id.*  Shanley denied the appeal.  *Id.*

On November 25, 2024, plaintiff filed a grievance related to "non-contact visits" and being restrained during visits.  Compl. at 17.  Vermilyea denied the grievance and plaintiff appealed to Rubino.  *Id.*  Rubino denied the appeal and plaintiff appealed to Doe Defendants/Council.  *Id.*  Kusminsky was informed that the facility decision was sustained. *Id.*

In November 2024, January 2025, and February 2025, plaintiff filed grievances. Compl. at 18-22.  Vermilyea denied the grievances and plaintiff appealed to Rubino.  *Id.* Rubino denied the appeals and plaintiff appealed to Doe Defendants/Council.  *Id.*  Kusminsky was informed that the grievances were denied.  *Id.*

Construed liberally[1], the complaint contains the following: (1) First Amendment claims related to the grievance process; (2) First Amendment free exercise and RLUIPA claims; (3) excessive force and condition-of-confinement claims; (4) Fourteenth Amendment due process claims; (5) First Amendment retaliation claims; and (6) state law claims.  *See generally* Compl.  Plaintiff seeks monetary damages relief and injunctive relief.  *See id.*  For a

---

[1]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

### C.  Analysis

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983.  *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").  To prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability.").  "[A] plaintiff must plead and prove 'that each Government-official

defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal,* 556 U.S. at 676).

### 1. Rule 10

The complaint contains allegations related to individuals who are not identified in the caption, or list of parties, as defendants. *See* Compl. at 5, 12, 14-16. Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim. *See Whitley v. Krinser,* No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### 2. Constitutional Claims Related to Grievance Process

Inmates do not have a constitutional right to state grievance programs. *See Shell v. Brzeniak*, 365 F.Supp.2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created

by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim.").

Moreover, inmates do not have a due process right to an investigation requested through a grievance. *See DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally,* No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v. Mazzurca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process right to a thorough investigation of grievances).

Accordingly, plaintiff's First Amendment claims related to the processing of his grievances and complaints are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. First Amendment – Free Exercise/RLUIPA

Plaintiff claims that Vermilyea, Rubino, Shanley, Doe Defendants/Council, and Kusminsky violated his First Amendment rights and RLUIPA because they denied him personal religious items and Santeria services. *See* Compl. at 25-26.

The First Amendment to the United States Constitution guarantees the right to free

exercise of religion.  *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.' "  *Kravitz v. Purcell*, No. 22-764, 2023 WL 8177114, at *11 (2d Cir. Nov. 27, 2023) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Thus, "an infringement of the free exercise of religion [may be] permissible . . . if it is 'reasonably related to legitimate penological interests.' "  *Id.* (quoting Benjamin, 905 F.2d at 574).  "[T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives."  *Kravitz*, 87 F.4th at 128 (alterations adopted) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that

compelling governmental interest."  42 U.S.C. § 2000cc–1(a) (2012).   Courts analyzing RLUIPA claims use the First Amendment "sincerely held religious beliefs" standard to determine whether a plaintiff was engaged in a "religious" exercise.  *See Sioleski v. McGrain*, No. 10-CV-0665S, 2012 WL 32423, at *2, n. 2 (W.D.N.Y. Jan. 5, 2012) (citations omitted). There is no cognizable private right of action under RLUIPA against state officers sued in their individual capacities.  *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013).  Only injunctive relief is available under RLUIPA and RLUIPA does not authorize monetary damages against state officers in their official capacities.  *Loccenitt v. City of New York,* No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013); *see also Sossamon v. Texas*, 563 U.S. 277 (2011).

Here, plaintiff does not allege that Vermilyea, Rubino, Shanley, Doe Defendants/Council, or Kusminsky personally denied him the right to possess religious items. Rather, plaintiff describes interactions with officers who are not identified as defendants in the complaint.  Moreover, plaintiff claims he was "informed" by officers who are not identified as defendants in the complaint, that his requests were denied.  *See* Compl. at 5.  The only connection between defendants and the alleged First Amendment violations is plaintiff's grievance related to the issue.  In light of *Tangreti,* the Court finds that denying plaintiff's grievances related to his religious rights is not enough to plausibly suggest that defendants were personally involved in the alleged wrongdoing.  *See, e.g., Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *Hendricks v. Mallozzi,* No. 9:20-CV-1035 (MAD/ML), 2022 WL 1129887, at *8 (N.D.N.Y. Jan. 14, 2022)

11

(reasoning that the plaintiff's allegations against the defendants related solely to their denial and/or affirmation of the denial were insufficient to plausibly suggest the personal involvement), *report and recommendation adopted*, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022).

Accordingly, plaintiff's free exercise claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the RLUIPA claims, the complaint does not indicate whether defendants are sued in their individual capacity, official capacity, or both. Accordingly, plaintiff's RLUIPA claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Excessive Force

As an initial matter, the Court notes that it is unclear whether plaintiff's excessive force claims arise under the Eighth or Fourteenth Amendment because it is not clear from the complaint whether plaintiff was confined at Greene C.J. as a convicted and sentenced prisoner or as a pretrial detainee at the time of the alleged events. If plaintiff was convicted at the time of the acts alleged in the complaint, he is protected from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). If plaintiff was confined as a pretrial detainee, his claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quotation omitted).

Conversely, in the context of excessive force claims asserted by pretrial detainees, the Supreme Court distinguished between Eighth and Fourteenth Amendment claims in holding that a pretrial detainee alleging that an officer used excessive force against him in violation of

the Fourteenth Amendment need not demonstrate that such officer was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, 576 U.S.389 (2015). "[A] pretrial detainee must only show that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim." *Id.* at 396-97. "[I]f the use of force is deliberate – i.e., purposeful and knowing-the pretrial detainee's claim may proceed." *Id.* at 396.

Courts consider a number of factors when determining objective reasonableness, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley,* 576 U.S. at 396.

Plaintiff alleges that Vermilyea, Rubino, and Shanley failed to respond to his grievance related to being sprayed with a chemical agent and thus, violated his Eighth Amendment/Fourteenth Amendment rights. *See* Compl. at 27. Plaintiff also asserts excessive force claims against Shanley and Albin. *See id.* Under either standard, as presently plead, the excessive force claims are subject to dismissal for the following reasons. First, the allegations related to the use of force are too vague to suggest that plaintiff suffered a constitutional violation. In a conclusory fashion, plaintiff claims he was sprayed with a chemical agent and not permitted to "decontaminate" and that he was "slammed" into a glass window during a cell move. See Compl. at 12-13. Plaintiff does not identify the location of the incidents, or the time frame for the incidents, and does not describe the events that

14

precipitated the incidents including whether plaintiff was given, and failed to respond to officer's orders.  Moreover importantly, plaintiff did not identify any individual or officer involved in the incidents.  The only connection between Vermilyea, Rubino, Shanley, and Albin and the incident is plaintiff's grievances and complaints.  As discussed *supra,* defendants' failure to act on plaintiff's grievance or complaint cannot support an inference of personal involvement.

Accordingly, plaintiff's excessive force claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4.  Conditions of Confinement

While the Eighth Amendment " 'does not mandate comfortable prisons,' . . . neither does it permit inhumane" treatment of those in confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test."  *Jolly v. Coughlin*, 76 F.3d 468,480 (2d Cir. 1996) (citation omitted).  To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' "  *Id*. (citation omitted).  "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' "  *Jolly,* 76 F.3d at 480 (citation

15

omitted).  To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.  Such a claim is typically analyzed under a two-pronged standard.  The objective prong of the deliberate indifference claim is the same as a convicted prisoner under the Eighth Amendment. *Id*. at 30.  To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Second, the pretrial detainee must satisfy the "subjective prong" by showing that the officer acted with deliberate indifference to the challenged conditions. *Darnell,* 849 F.3d at 29.  As to the "mens rea" prong, a pretrial detainee must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. at 35; *see Bruno v. City of Schenectady*, 2018 WL 1357377 (2d Cir. 2018).

### a.  Visits

Plaintiff alleges that Vermilyea, Rubino, Shanley, the Doe Defendants/Council, and Kusminsky "were in aggreance [sic]" that, for one month, plaintiff should have "non-contact" visits with his family, while handcuffed.  Compl. at 28.  Plaintiff claims Vermilyea, Albin,

Rubino, Doe Defendants/Council, and Kusminsky were personally involved because they denied his grievance related to the issue and "failed to remedy these wrongs." *Id*. Initially, the Court notes that, "the denial of contact visitation does not amount to the infliction of pain at all, and that, even it did, it does not amount to the sort of wanton (and penologically unjustified) infliction of pain[.]" *Hughes v. Butt*, No. 9:06-CV-1462, 2009 WL 3122952, at *14 (N.D.N.Y. Sept. 28, 2009) (citations omitted). Here, plaintiff does not allege that he is prevented from having visitors. Additionally, as discussed *supra*, plaintiff cannot state a constitutional claim based upon receipt and denial of grievances. Accordingly, plaintiff's claims related to visitation are subject to dismissal. *See Zimmerman v. Burge,* No. 06-CV-0176 (GLS/GHL), 2008 WL 850677, at *3 (N.D.N.Y. Mar. 28, 2008).

### b. Fresh Air/Recreation

Plaintiff alleges that Shanley, Rubino, and Vermilyea violated his Eighth/Fourteenth Amendment rights when they failed to address his grievance related to being denied outside/fresh air and recreation for 13 days. Compl. at 30. Again, plaintiff's claims related to his lack of fresh air or recreation are based solely upon defendants' decisions related to his grievance on the issue. The complaint is totally devoid of facts suggesting that any named defendant was personally involved in the decision to deny plaintiff fresh air or recreation for thirteen days. For the reasons set forth *supra*, plaintiff's claims related to his lack of fresh air/recreation are dismissed.

### 5. Due Process

Plaintiff claims Shanley confined plaintiff in a "single occupancy living unit," for approximately four months, without any "review, renewals, or assessment." *See* Compl. at

17

29.  To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

The Supreme Court has held that although states may still create liberty interests protected by due process, with respect to convicted prisoners "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  The "atypicality" inquiry under *Sandin* is normally a question of law.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).  In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof.  *Id.*

However, a pretrial detainee need not meet such a stringent standard because "[a] detainee's interest in freedom from unjustified infliction of pain and injury is more substantial[.]"  *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001); *see also Iqbal*, 490 F.3d at 146, *rev'd on other grounds, Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ("Th[e Second Circuit] has said that *Sandin* does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships

to state deprivation of a liberty interest protected by procedural due process."). "Therefore, in the case of a pretrial detainee, the court must determine whether the condition imposed on the inmate was for a legitimate purpose or for the purpose of punishment." *Myers v. Bucca*, No. 6:15-CV-553 (DNH/ATB), 2015 WL 13401929, at *9 (N.D.N.Y. Dec. 7, 2015) (citations omitted), *report and recommendation adopted by* 2016 WL 165016 (N.D.N.Y. Jan. 14, 2016). "Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Benjamin*, 264 F.3d at 188.

A convicted prisoner or pretrial detainee is entitled to the due process procedures outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). "These procedures include a disciplinary hearing and written notice of the charges at least twenty-four hours in advance of that hearing; the opportunity to present witnesses and documentary evidence before an impartial hearing officer as long as doing so will not jeopardize prison safety and security; and a written statement including evidence relied on by the hearing officer in reaching his or her decisions and the reasons for the disciplinary action." *Myers*, 2015 WL 13401929, at *9 (citing *Wolff,* 418 U.S. at 564-66).

The Due Process Clause requires, among other things, that prison officials periodically review whether an inmate who is confined in Administrative Segregation ("Ad Seg") continues to pose a threat to the facility in order to ensure that Ad Seg is not used a pretext to keep the inmate in the SHU indefinitely. *Proctor v. LeClaire,* 846 F.3d 597, 601 (2d Cir. 2017) (citing

19

*Hewitt v. Helms*, 459 U.S. 460, 477 n.9, (1983)).  The purpose of periodic reviews "is to ensure that the state's institutional interest justifying the deprivation of the confined inmate's liberty has not grown stale and that prison officials are not using Ad Seg as a pretext for indefinite confinement of an inmate."  *Id*. at 609 (quoting *Hewitt*, 459 U.S. at 476-77 & n.9).  The Supreme Court has noted that prison officials have "wide latitude in the procedures they employ" when Ad Seg is used to "incapacitate an inmate who 'represents a security threat' " and who remains a security risk throughout his confinement in Ad Seg.  *Id*.

Here, while plaintiff claims he was confined to a single cell unit, the complaint contains contradictory allegations related to whether his confinement constituted Ad Seg.  Moreover, the complaint is devoid of facts suggesting that plaintiff's confinement was atypical and significant because the complaint lacks facts related to plaintiff's conditions of the segregated confinement compared to ordinary prison conditions.  Further, the individual who presided over the disciplinary hearing is not identified as a defendant in this action.  *See* Compl. at 16. Accordingly, the complaint does not suggest that any named defendant confined plaintiff to a single cell unit with an "express intent to punish."  Because plaintiff has not sufficiently plead an underlying due process violation, plaintiff attempts to impose liability upon Shanley based upon his affirmation of the hearing officer's determination is also subject to dismissal.  *See Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *17 (N.D.N.Y. Sept. 11, 2014).

Accordingly, plaintiff's due process claims related to his single cell confinement are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Retaliation

Plaintiff claims that Shanley and Rubino "blocked contacts and phone numbers" as "retaliatory acts due to the plaintiff's friends and family reaching out to individuals and legal entities[.]" Compl. at 30-31.

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (cleaned up) (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. *Id.* "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line . . . defin[ing] the outer limits" of the

21

"temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

Here, plaintiff's retaliation claims are wholly conclusory without any factual support. Initially, the Court notes that plaintiff has failed to plead that he engaged in protected conduct. Even assuming plaintiff's protected conduct stems from his family members reaching out to "individuals" and "legal entities," the complaint lacks facts to plausibly suggest that Shanley and/or Rubino was aware that his family "reached out" to unnamed individuals and unidentified entities or how and why defendants would be motivated to retaliate as a result of that contact. Moreover, plaintiff has not plead that he suffered an "adverse action" that was causally related to any protected activity. To wit, plaintiff does not claim when, how, or for how long his "contacts" were "blocked" and whether he was unable to reach his "contacts" in any manner.

Simply put, plaintiff's retaliation claims are insufficiently plead to survive this Court's sua sponte review. Accordingly, plaintiff's retaliation claims related to his single cell confinement are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. Supervisory Liability

Plaintiff claims defendants Chairman Allen Riley ("Riley"), Commissioner Yolanda Canty ("Canty"), Commissioner Elizabeth Gaynes ("Gaynes"), and Kusminsky were

22

personally involved in constitutional violations because they failed to "adequately supervise the subordinates[.]"  Compl. at 26-27.

　　"Liability based solely [. . .] due to a failure to supervise, without more, constitutes precisely the type of vicarious, respondeat superior liability that *Iqbal* and *Tangreti* eliminate." *Myers on behalf of Est. of Myers v. Davenport*, No. 1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *4 (N.D.N.Y. July 29, 2022) (citation omitted).  In this case, the complaint is devoid of any allegations which plausibly suggest that defendants directly participated in any alleged constitutional violation or that defendants were present or otherwise involved in any constitutional violation.  In the absence of some tangible connection between defendants and the alleged constitutional claims, the claims against defendants must be dismissed.  *See O'Brien v. City of Syracuse*, No. 5:22-CV-948 (MAD/TWD), 2023 WL 6066036, at *19 (N.D.N.Y. Sept. 18, 2023) (citing, *inter alia, Robinson v. Graham,* No. 20-CV-1610, 2021 WL 2358415, *3 (N.D.N.Y. June 9, 2021) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available" after *Tangreti)*, *reconsideration denied,* 2024 WL 4252052 (N.D.N.Y. Sept. 20, 2024)

### 8.  State Law Claims

　　Plaintiff claims that defendants' policies violated the provisions of the HALT Act. District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000).

The alleged violations of the HALT Act are parallel to plaintiff's federal claims for deliberate indifference.  Because plaintiff's federal claims for deliberate indifference are being dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee,* 316 F.3d 299, 306 (2d Cir. 2003).

## III.    LEAVE TO AMEND

In light of his pro se status, the Court will afford plaintiff the opportunity to file an amended complaint if he desires to proceed with this action.  Any such amended complaint, which shall supersede and replace in its entirety the previous complaint filed by plaintiff, must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action.  The body of plaintiff's amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Thus, if plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

24

**ORDERED** that, if plaintiff wishes to proceed with this action, he must file an amended complaint as set forth above within thirty (30) days from the date of the filing of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that, if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B)and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order.  In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

Dated: August 14, 2025

Glenn T. Suddaby
U.S. District Judge